1
2
3
4
5
6
7
8
9
10

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 11  DIRECTV INC., a California Corporation, | CASE NO. 11cv1821 WQH (BGS) |
| 12                                    Plaintiff, | ORDER |
| 13        vs. | |
| 14  MINA CHAU, individually; doing business as TORO SUSHI RESTAURANT, also known as TORO SUSHI | |
| 15 | |
| 16                                    Defendant. | |

17

HAYES, Judge:

18
19      The matters before the Court are the Motion for Voluntary Dismissal (ECF No. 26) and
the Amended Motion for Default Judgment (ECF No. 27) filed by Plaintiff DirecTV, Inc.

20                              **BACKGROUND**

21      On August 16, 2011, Plaintiff DirecTV Inc. initiated this action by filing the Complaint
22  against Defendant Mina Chau, individually and doing business as TORO Sushi Restaurant,
23  also known as TORO Sushi.  (ECF No. 1).  The Complaint alleged that Plaintiff is a California
24  corporation with proprietary rights to the National Football League games only available
25  through Plaintiff's *"NFL Sunday Ticket"* service, which was broadcast on October 24, 2010
26  (the "Program").  *Id.* at 2.  The Complaint alleged that Defendant is the license holder and an
27  individual with supervisory capacity and control of the commercial establishment doing
28  business as Toro Sushi Restaurant, also known as Toro Sushi, which is located at 6171 Mission

1  Gorge Road, Suite 103 in San Diego. *Id.* The Complaint alleged that Defendant willfully, and

2  for the purpose of direct or indirect commercial advantage or financial gain, received and

3  displayed the Program at Toro Sushi without obtaining valid commercial exhibition rights or

4  authorization from Plaintiff. *Id.* at 4. The Complaint alleged claims for (1) violation of 47

5  U.S.C. § 605(a) on the grounds that Defendant engaged in the unauthorized publication or use

6  of the Program; (2) violation of 18 U.S.C. § 2511 on the grounds that Defendant intentionally

7  intercepted, disclosed and knowingly used the Program; and (3) conversion on the grounds that

8  Defendant intentionally and unlawfully converted Plaintiff's property for its own commercial

9  use and benefit, thereby depriving Defendant of its proprietary interests. *Id.* at 5-7.

10  On September 27, 2011, Kathryn A. Martin of Higgs, Fletcher & Mack LLP filed an

11  acknowledgment of service and a waiver of service of the Complaint on behalf of Defendant.

12  (ECF Nos. 4, 5).

13  On November 23, 2011, Martin and Higgs, Fletcher & Mack LLP filed a motion to

14  withdraw as counsel of record for Defendant. (ECF No. 9). Plaintiff filed no opposition. On

15  January 3, 2012, the Court granted the motion to withdraw. (ECF No. 12).

16  July 11, 2012, Plaintiff filed a request for entry of clerk default. (ECF No. 17). In

17  support of the request for entry of clerk default, Plaintiff submitted the affidavit of Plaintiff's

18  counsel Wayne D. Lonstein, who stated that Defendant was duly served and did not respond

19  to the Complaint in the time allowed by law. (ECF No. 17-1). On July 18, 2012, the Clerk

20  entered default as to Defendant. (ECF No. 18).

21  On August 28, 2012, Plaintiff filed a Motion for Default Judgment, in which Plaintiff

22  requested statutory damages as to claim one of the Complaint, but failed to address claims two

23  or three. (ECF No. 21). Defendant did not file any response. On October 9, 2012, the Court

24  denied the Motion for Default Judgment on the grounds that "Plaintiff has not shown cause for

25  the entry of partial default judgment pursuant to Rule 54(b)," and instructed Plaintiff to file any

26  further request for default judgment within thirty days. (ECF No. 25).

27  On October 19, 2012, Plaintiff filed the Motion for Voluntary Dismissal, requesting that

28  "Count II, for violation of 18 U.S.C. § 2511, and Count III for civil conversion of Plaintiff's

Complaint be dismissed with prejudice and without costs to either party ...."  (ECF No. 26).  On October 19, 2012, Plaintiff filed the Amended Motion for Default Judgment, which states: "Although the Complaint filed in this matter set forth three separate counts, Plaintiff seeks Default Judgment pursuant to Count I of the Complaint.  Plaintiff is simultaneously herewith filing a motion to dismiss Counts II and III from the Complaint."  (ECF No. 27 at 2).  As to claim one, Plaintiff requests statutory damages of $10,000.00 for violation of 47 U.S.C. § 605(a), statutory damages of $100,000.00 for willful violation of 47 U.S.C. § 605(a), and $3,522.50 for costs and attorney fees, for a total award of $113,522.50.  *Id.*

Plaintiff submits the affidavit of its attorney, Wayne D. Lonstein, who states:

> ... Plaintiff has been unable to conduct discovery in this matter as Defendant has failed to appear. The Complaint clearly alleges that the Defendant pirated the subject event in violation of 47 U.S.C. §605. Further, based upon Defendant's default, the facts alleged in the complaint are deemed admitted. Therefore, Plaintiff seeks damages under 47 U.S.C.§605 as defendant, through her default, has admitted that, without authorization from Plaintiff, she illegally intercepted the scrambled transmissions of the Program and knowingly and wilfully offered it to patrons of her commercial establishment for private financial gain or commercial advantage. ...

> Plaintiff's litigation expenses as associated with the formation, pleading and filing of the above captioned matter are as outlined below: a. Filing Fees - $350.00; b. Service of Process - $0; c. Attorney Fees - $3172.50 ... Total Litigation Expenses ($3522.50)

> Attorney fees [billed] at $250.00 per hour for attorney time spent and $75.00 for paralegal time spent....

(ECF No. 27-2).

Plaintiff submits the affidavit of Vice President of Revenue and Margin Assurance for DirecTV, Kent P. Mader, who states:

> The defendant ... did not have the right to exhibit the NFL Sunday Ticket in her commercial establishment on October 24, 2010. ...

> On October 24, 2010, at approximately 12:00 pm, auditor Michael Mendoza observed two (2) televisions in the Defendant's establishment which were exhibiting two (2) NFL games for public viewing.  Toro Sushi has an estimated occupancy of 50-100 patrons.  The auditor's affidavit attesting to these facts is attached as Exhibit "A."  A photograph of the auditor's observations were also taken and are attached as Exhibits "B" and "C," respectively.

> The unauthorized NFL game observed by the auditor at Toro Sushi was: ... Cleveland Browns v. New Orleans Saints. ...

> After receiving [an] auditor's report, DIRECTV conducted a search of its

records and determined that there was no DIRECTV *commercial* account for Toro Sushi located at 6171 Mission Gorge Road, San Diego, CA 92120 authorized to receive the [Cleveland Browns v. New Orleans Saints game] through DIRECTV's NFL Sunday Ticket (tm) 2010 commercial programming.

Residential account number 009460322 in the name of Quinn Chau located at 5060 Sterling St., San Diego, CA 92105-662374 was originally activated on August 19, 2001. The account records for account number 009460322 verify NFL Sunday Ticket(tm) 2010 was purchased at a residential rate. Thus, there was no DIRECTV *commercial* account for Toro Sushi that was authorized to receive DIRECTV's NFL Sunday Ticket(tm). ...

The unauthorized use of DIRECTV programming through fraudulent conduct has a negative effect upon DIRECTV and lawful commercial customers. Furthermore, commercial misappropriation of DIRECTV residential programming results in significant loss of revenue and places legitimate commercial subscribers at a disadvantage by having to compete with businesses like Toro Sushi who unlawfully acquire programming such as NFL Sunday Ticket(tm) without paying the commercial rates.

(ECF No. 27-1 at 1-6).

Plaintiff submits the affidavit of its auditor, Michael Mendoza ("Mendoza"), who states:

... [O]n October 24, 2010 at approximately 12:00 pm, I entered the commercial establishment known as Toro Sushi, located at 6171 Mission Gorge Road, City of San Diego, State CA, Zip 92120.... I observed 2 TVs, the description and location within establishment as follows: one on north wall and one on south wall. ... I observed a portion of the NFL games between the following teams on 2 televisions: CLE v. NO, Q3, Score 20-3, Time Remaining 9:30, Channel Observed 708. ...

I also took video of the telecast at this location and attach it hereto to make a part hereof. ...

(ECF No. 27-1 at 8-9). Plaintiff submits a "Video Evidence Disc" containing video footage of Toro Sushi taken by Mendoza on October 24, 2010. (ECF No. 27-6).

## RULING OF COURT

In the Motion for Voluntary Dismissal, Plaintiff asserts that "permitting Plaintiff to dismiss Counts II and III from the Complaint would remove the procedural hurdle under Rule 54(b) and permit Plaintiff to proceed with the Amended Motion for Default Judgment under Count I involving 47 U.S.C. §605, a strict liability statute." (ECF No. 26 at 2). Defendant has not filed any opposition to Plaintiff's Motion for Voluntary Dismissal. Pursuant to Federal Rule of Civil Procedure 41(a)(2), the Court grants the Motion for Voluntary Dismissal and dismisses claims two and three "with prejudice and without costs to either party." (ECF No. 26 at 3); Fed. R. Civ. P. 41(a)(2).

1   **I.    Default Judgment**

2        Rule 55(a) of the Federal Rules of Civil Procedure requires that the clerk of the court

3   enter default "when a party against whom a judgment for affirmative relief is sought has failed

4   to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ.

5   P. 55(a).  Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that the court may

6   grant a default judgment after default has been entered by the clerk of the court.  Fed. R. Civ.

7   P. 55(b)(2).  After default has been entered by the clerk of the court, the complaint's factual

8   allegations are taken as true, while allegations regarding damages must be proven. *TeleVideo*

9   *Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

10       Plaintiff has demonstrated that Defendant has been duly served and has not filed a

11  responsive pleading.  The Clerk of the Court has entered Defendant's default.  The Court finds

12  that the Complaint's factual allegations are sufficient to sustain the causes of action alleged in

13  the Complaint.  The Court concludes that Plaintiff is entitled to default judgment against

14  Defendant as to claim one.

15  **II.    Damages**

16       Under 47 U.S.C. § 605(a), a person is prohibited from intercepting and distributing a

17  radio or television broadcast outside of authorized channels. 47 U.S.C. § 605(a).  "If a plaintiff

18  proves a violation of section 605(a), a court may award compensatory damages, or, if the

19  plaintiff requests, between $1,000 and $10,000 in statutory damages." *Universal Sports*

20  *Network, Inc. v. Jimenez*, C-02-2768-SC, 2002 WL 31109707, *1 (N.D. Cal. Sept. 18, 2002).;

21  47 U.S.C. § 605(e)(3)(C)(i)(II).  If a violation is committed "willfully and for purposes of

22  direct or indirect commercial advantage or private financial gain, the court in its discretion may

23  increase the award of damages, whether actual or statutory, by an amount of not more than

24  $100,000." 47 U.S.C. § 605(e)(3)(C)(ii).

25       "The district court has 'wide discretion in determining the amount of statutory damages

26  to be awarded.'" *DirecTV Inc. v. Le*, 267 F. App'x 636 (9th Cir. 2008) (quoting *Harris v. Emus*

27  *Records Corp.*, 734 F.2d 1329, 1335 (9th Cir.1984)).  When determining damages, courts

28  evaluate the extent to which a plaintiff demonstrated a defendant's intent to profit from the

rebroadcast, the extent of the rebroadcast and the number of patrons viewing the rebroadcast. *See Jiminez*, 2002 WL 31109707, at *2. "Where events were broadcast on a single occasion to a small audience, and plaintiff produces little or no evidence of financial gain, courts typically have awarded only the $1,000 statutory minimum." *Id.*, *see also Kingvision Pay-Per-View, Ltd. v. Chavez*, C 00-2270 CRB, 2000 WL 1847644 (N.D. Cal. Dec. 11, 2000) ("In accordance with other default judgments involving similar facts, this Court imposes $1,000 in damages for the second violation. For the first violation, however, in which the defendants appear to have enjoyed a greater and more direct financial gain (because of both the cover charge and the greater number of patrons), the Court will assess $1,000 in damages and a $5,000 enhancement.").

In this case, the Complaint alleged that Defendant's violations were willful and carried out "for commercial benefit or financial gain." (ECF No. 1 at 4). The Complaint does not allege prior or repeated violations, nor does it allege that Defendant established a cover charge in order for customers to view the Program. The evidence in the record shows that the Program was broadcast on October 24, 2010 to an audience of approximately six patrons. (ECF No. 27-6). The Court concludes that minimum statutory damages under 47 U.S.C. § 605 are proper, and awards Plaintiff $1,000.00 in statutory damages. *See id.* The Court declines to award Plaintiff enhanced statutory damages under section 605(e)(3)(C)(ii).

## III.    Costs and Attorney Fees

"The court shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii). Plaintiff seeks attorney fees in the amount of $3,172.50, and costs in the amount of $350.00. In support of its fee request, Plaintiff submits the declaration of counsel, Wayne D. Lonstein. (ECF No. 27-2). Attached to Lonstein's declaration are billing statements reflecting that he billed Plaintiff at an hourly rate of $250.00 and that his paralegal billed Plaintiff at an hourly rate of $75.00. *Id.* at 3. After reviewing Lonstein's declaration, the Court concludes that attorney fees in the amount of $3,172.50 and costs in the amount of $350.00 are reasonable. *See Directv, Inc. v. McVay*, 2005 U.S. Dist. LEXIS 29494 (E.D. Cal. Sept. 19, 2005) ("[T]he

prevailing rate for top attorneys in this area is in the range of $225 to $250 per hour, with incremental decreases for attorneys of lesser experience and for staff."). The Court awards Plaintiff $3,522.50 in costs and attorney fees.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Voluntary Dismissal (ECF No. 26) is **GRANTED**. Claims two and three of the Complaint are dismissed with prejudice**.** The Amended Motion for Default Judgment (ECF No. 27) is **GRANTED**. Plaintiff is entitled to a default judgment against Defendant as to claim one of the Complaint and an award of $1,000.00 in statutory damages and $3,522.50 in costs and attorney fees. Plaintiff shall file a proposed judgment in accordance with this Order within fourteen (14) days of the date of this Order.

DATED: November 27, 2012

*William Q. Hayes*

**WILLIAM Q. HAYES**
United States District Judge